**STATE of Minnesota, Respondent,**

v.

**Kevin Ervin STALL, Appellant.**

**No. A13–1041.**

Court of Appeals of Minnesota.

April 14, 2014.

---

Lori Swanson, Attorney General, St. Paul, MN; and David J. Hauser, Otter Tail County Attorney, Heather L. Brandborg, Assistant County Attorney, Fergus Falls, MN, for respondent.

Christopher J. Cadem, Cadem Law Group, PLLC, Fergus Falls, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; PETERSON, Judge; and RANDALL, Judge.

## OPINION

RANDALL, Judge.*

A commercial vehicle inspector of the Minnesota State Patrol stopped appellant Kevin Stall and Stall's truck for a roadside spot check. The inspector, who is not a licensed peace officer and cannot make arrests, stated that he randomly decided to make the stop. The spot check revealed that Stall's driving privileges had been cancelled, and Stall was charged with driving after cancellation. Stall moved the district court to suppress all evidence obtained from the stop. The district court denied the motion. The State has failed to

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

present, and we cannot find, any statute authorizing state patrol employees who are not troopers to stop drivers and motor vehicles. We reverse.

## FACTS

Brett Syverson was working during the 2012 potato harvest as a commercial vehicle inspector for the Minnesota State Patrol. He was assigned to a ten-county district but independently chose where to conduct inspections each day. After selecting a location, he would put out an orange sign to notify oncoming drivers of the inspection site. He then randomly chose which trucks to stop and inspect. The extent of an inspection varied—from simply reviewing paperwork and weighing the vehicle to checking the entire vehicle and all its equipment—based on what Syverson wanted to do.

On September 14, Syverson set up a roadside inspection site on Highway 78 south of Perham, intending to weigh potato trucks. He picked the location based on the presence of safety features such as slower traffic speeds and wide shoulders, which allowed trucks to pull over without obstructing traffic. Around 2 p.m., Syverson saw a truck coming and decided to wave it down. He turned on his vehicle's lights, exited, and directed the driver to the side of the road.

Appellant Kevin Stall was driving the truck, a straight truck with a "potato box" and no trailer. Syverson greeted Stall and asked for Stall's driver's license. Stall first said he did not have his license with him, then said he did not have a license. Syverson ran Stall's name and birthdate and learned that Stall's driving privileges had been cancelled as inimical to public safety. Syverson called a trooper for assistance and then conducted a full inspection of Stall's truck. The inspection took one hour and revealed five violations. Sy-

verson issued Stall a citation for driving an overweight vehicle. The trooper took Stall into custody and booked him for driving after cancellation. The next week, Stall pleaded guilty to the weight citation and paid a fine.

Four days later, the state charged Stall with driving after cancellation in violation of Minnesota Statutes section 171.24, subdivision 5 (2012). Stall moved the district court to suppress all evidence obtained during Syverson's inspection. The district court held an omnibus hearing, during which Syverson testified and the defense introduced a copy of Syverson's supplemental field report. The parties also submitted a certified copy of Stall's conviction for the weight citation. The district court denied Stall's motion. The case proceeded to a court trial under Minn. R.Crim. P. 26.01, subd. 4, and the court found Stall guilty and convicted him of driving after cancellation-inimical to public safety. Stall appeals.

## ISSUE

Did Syverson have statutory authority as a commercial vehicle inspector to stop Stall and his truck for a roadside spot check?

## ANALYSIS

Stall challenges the district court's denial of his suppression motion, arguing in part that Syverson lacked authority to stop him. This is a matter of statutory interpretation. We therefore review de novo. *S.M. Hentges & Sons, Inc. v. Mensing,* 777 N.W.2d 228, 231 (Minn.2010).

State patrol members have broad powers as peace officers to enforce laws, especially on trunk highways. *See* Minn.Stat. § 299D.03, subd. 1(b) (2012) (outlining powers and duties of the state patrol); *see also* Minn.Stat. § 626.84, subd. 1(c)(1)

(2012) (stating that the state patrol has "the full power of arrest"). But the authority of state patrol employees who are not troopers is limited. *See* Minn.Stat. § 299D.06 (2012).

Non-troopers can be employed only to enforce specific, enumerated laws. *See id.* (a). When doing so, they have the power to "issue citations in lieu of arrest and continued detention" and prepare notices for court appearances. *Id.* (b). But they have "none of the other powers and privileges reserved to peace officers including the power to enforce traffic laws and regulations." *Id.* (c).

Stopping vehicles, whether for inspection or otherwise, falls beyond the powers granted in section 299D.06 to state patrol employees who are not troopers. It involves far more than issuing a citation or a notice to appear. As such, the source of Syverson's authority to stop Stall and his truck must come from elsewhere.

The state argues that Syverson was authorized to stop Stall and his truck under Minnesota Statutes section 169.771 (2012). Section 169.771 directs the commissioner of public safety to "accelerate spot-check inspections for unsafe motor vehicles and motor vehicle equipment." *Id.* subd. 2(a). It provides that "[s]uch inspections shall be conducted by the personnel of the State Patrol." *Id.* But nothing in the language of section 169.771 authorizes non-troopers to stop vehicles.

The state also points to Minnesota Statutes section 221.221 (2012). Section 221.221 states, "The commissioner shall enforce the provisions of this chapter and rules, orders, and directives issued or adopted by the commissioner under this chapter." *Id.*, subd. 1. It provides,

> Representatives of the department to whom authority has been delegated by the commissioner for the purpose of enforcing sections 169.781 to 169.783 and

221.171 and the rules, orders, or directives of the commissioner adopted or issued under those sections, and for no other purpose, shall have the powers conferred by law upon police officers. The representatives of the department have the power to inspect records, logs, freight bills, bills of lading, or other documents which may provide evidence to determine compliance with sections 169.781 to 169.783 and 221.171.

*Id.*, subd. 3. Notably, this provision does not include any reference to section 169.771, which authorizes spot-check inspections, or section 169.824, which lays out the weight restrictions that Stall's truck violated. It only governs annual inspections, daily inspections, and reinspections after accidents. *See* Minn.Stat. §§ 169.781–.783 (2012).

Syverson was a commercial vehicle inspector, not a licensed peace officer or law-enforcement officer. He could not carry a firearm. He could not make an arrest. But he independently and randomly stopped a vehicle. The state has not presented, nor have we found, any statute authorizing such action. We hold that Syverson lacked authority to stop Stall and his truck.

### DECISION

Minnesota State Patrol employees who are not troopers lack statutory authority to stop motor vehicles. Syverson's random stop of Stall and his truck was unlawful; Stall's motion to suppress the evidence discovered as a result of that stop should have been granted.

**Reversed.**